## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:                         )

                                )     CHAPTER 13

MILLARD COURTNEY FARMER, JR.,   )

                                )     CASE NO. 18-52363-JWC

     Debtor                 )

## <u>MOTION FOR EMERGENCY HEARING</u>

COMES NOW, Millard Farmer, and respectfully moves for an emergency hearing on his motion to have the broker selling his property approved by the Court pursuant to 11 USC of § 327 and 11 USC § 328 and to have her requested compensation approved for the sale of property of scheduled to close April 29, 2019.

WHEREFORE debtor prays:

1) For a hearing on any day prior to April 23, 2019; and

2) For such other and further relief as is just and proper.

                                       Respectfully submitted,

                                       <u>/s/ Ralph Goldberg</u>
                                       Ralph Goldberg
                                       Georgia Bar No. 299475
                                       Attorney for Debtor

**Goldberg & Cuvillier, P.C.**
1400 Montreal Road, Suite 100
Tucker, Georgia 30084-6919
(770) 670-7343
(770) 670-7344 (FAX)
attorneygoldberg@hotmail.com

# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:                                            )
                                                  )      CHAPTER 13
MILLARD COURTNEY FARMER, JR.,      )
                                                  )      CASE NO. 18-52363-JWC
         Debtor                              )

## <u>MOTION TO SHORTEN TIME</u>

COMES NOW, Millard Farmer, and respectfully moves to shorten the time

necessary for notice prior to a hearing, for reasons outlined in the Motion for

Emergency Hearing.

Respectfully submitted,

<u>/s/ Ralph Goldberg</u>
Ralph Goldberg
Georgia Bar No. 299475
Attorney for Debtor

**Goldberg & Cuvillier, P.C.**
1400 Montreal Road, Suite 100
Tucker, Georgia 30084-6919
(770) 670-7343
(770) 670-7344 (FAX)
attorneygoldberg@hotmail.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:                                        :
                                              :         CHAPTER 13
MILLARD  COURTNEY                             :
FARMER, JR.,                                  :
                                              :         CASE NO. 18-52363-JWC
          Debtor.                             :

## APPLICATION TO EMPLOY LISTING BROKER

The application of Debtor, Millard Courtney Farmer, Jr. respectfully

represents:

1.

On the 9th day of February, 2018, Debtor filed a petition herein under

Chapter 13 of the Bankruptcy Code.

2.

Debtor wishes to employ a licensed real estate agent, Donna J. Hall, with

RE/MAX AROUND ATLANTA REALTY.

1

3.

Your Applicant has selected this agent for the reason that she has considerable experience in real estate matters and has secured a purchase and sale agreement for his property. Applicant believes that this agent is well qualified to represent him.

4.

To the best of Debtor's knowledge, said agent has no connection with any creditor or other party in interest herein or their respective attorneys.

5.

Your Applicant desires to employ Donna J. Hall and to compensate her at a rate of 6% of sales price.

6.

The agent has disclosed to your Applicant the fees applicable to the professional services to be rendered herein. I have agreed that the rates are reasonable.

7.

A copy of the contract appears on the Court's docket at Docket #77.

2

8.

The said agent represents no interest adverse to the Debtor or the estate in the matters upon which they are to be engaged for the Debtor, and her employment would be in the best interest of the estate.

WHEREFORE, your Applicant prays that he be authorized to employ and appoint this agent to sell his property.

This _____ day of April, 2019.

Respectfully submitted,

MILLARD COURTNEY FARMER, JR., Debtor

3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                           :
                                 :        CHAPTER 13
MILLARD  COURTNEY                :
FARMER, JR.,                     :
                                 :        CASE NO. 18-52363- JWC
         Debtor.                 :

## DECLARATION OF PROPOSED LISTING BROKER REMAX/AROUND ATLANTA REALTY

I, DONNA J. HALL, hereby declare under penalty of perjury that:

1)    I am a licensed real estate agent, duly licensed in the state of Georgia.

2)    I maintain an office as an agent at 17 Lenox Pointe, N. E. Suite B, Atlanta,

      Ga. 30324.

3)    I have no connection with or business or financial interest in the above-

      named debtor, his creditors; or any other party in interest herein or said

      person's attorneys or accountants or the United States Trustee or any of the

      assistant Trustees assigned to this matter with the exception of the sale of

      real property located at 1196 Dekalb Avenue, Atlanta, GA 30307.

4)    I represent no interest adverse to the Debtor or in the estate in the matters

      upon which I am to be engaged for the Debtor, and I am a "disinterested

      person" within the contemplation of 11 U.S.C. §101(14).

1

5)    I have been a licensed real estate agent since December 2, 1999.

6)    I have an executed listing agreement dated January 17, 2019 for the sale of

property at 1196 Dekalb Avenue, Atlanta, GA 30307. Said agreement states

the seller agrees to pay Broker, RE/MAX AROUND ATLANTA REALTY,

a commission of 6.0% of the sales price. The broker agrees to pay

cooperating broker, if any, 3.0% of the sales price of property.

7)    I believe that the rates that I am charging are extremely reasonable and in

line with the rates generally charged in the Atlanta area.

8)    I am requesting that the Court authorize total real estate commission of 6.0%

of the sales price.

This _14th_ day of April, 2019.


                                            Respectfully submitted,

                                            /s/Donna J. Hall
                                            Donna J. Hall

Re/Max Around Atlanta Realty

17 Lenox Pointe, Suite B

Atlanta, Ga. 30324

404-863-7777

FAX 404-974-4930

2



# EXCLUSIVE SELLER LISTING AGREEMENT
## (ALSO REFERRED TO AS EXCLUSIVE SELLER BROKERAGE AGREEMENT)



**2019 Printing**

State law prohibits Broker from representing Seller as a client without first entering into a written agreement with Seller under O.C.G.A. § 10-6A-1 et. seq.

## A. KEY TERMS AND CONDITIONS

1. **Exclusive Listing Agreement.** The undersigned seller(s) ("Seller" or "Client") agree to grant and the undersigned broker and its affiliated licensees ("Broker") agree to accept the exclusive right and privilege to show and offer for sale the property described below ("Property") as the agent of the Seller on the terms and conditions set forth in this Agreement.

   a. **Property Identification:** Address: 1196 Dekalb Avenue NE
   City Atlanta _____, County Dekalb _____, Georgia, Zip Code 30307
   Tax Parcel I.D. Number: 15 209 04 277

   b. **Legal Description:** The legal description of the Property is [select one of the following below]:

   ☐ (1) attached as an exhibit hereto;

   ☑ (2) the same as described in Deed Book 5127, Page 715, et. seq., of the land records of the above county; **OR**

   ☐ (3) Land Lot(s) _____ of the _____ District, _____ Section/ GMD, Lot _____, Block _____, Unit _____, Phase/Section of_____ Subdivision/Development, according to the plat recorded in Plat Book _____, Page _____, et. seq., of the land records of the above county; **OR**

   ☐ (4) described below if Property is a condominium unit and a full unit legal description is to be used [NOT TO BE USED IF PROPERTY IS A FEE SIMPLE TOWNHOME]:
   Unit _____ of _____ Condominium ("Condominium"), located in Land Lot _____ of the _____ District of _____ County, Georgia, together with its percentage of undivided interest in the common elements of the Condominium, and its interest in the limited common elements assigned to the unit ("Unit"). The Condominium was created pursuant to the Declaration of Condominium for any Condominium ("Declaration"), recorded in Deed Book _____, Page _____, et seq., _____ County, Georgia records ("Declaration"), and shown and delineated on the plat of survey filed in Condominium Plat Book _____, Page _____, _____ County, Georgia records, and on the floor plans filed in Condominium Floor Plan Book _____, Page _____, _____ County, Georgia records.

2. **Listing Period.** The term of this Agreement shall begin on the date of January 18, 2019 ("Starting Date"). The term of this Agreement shall continue through the date of March 31, 2019 ("Ending Date") which is hereinafter referred to as "Listing Period".

3. **Broker's Duties: List Price.** The price at which the Property shall be listed is $575,000.00 ("List Price").

4. **Negotiation.** Seller ☑ does **OR** ☐ does not authorize the Broker to assist, to the extent requested by Seller, in negotiating the terms of and filling out a pre-printed real estate purchase and sale agreement and/or counteroffer.

5. **Marketing.** Broker agrees to file this listing with the following Multiple Listing Service(s): FMLS - first Multiple Listing Service and GAMLS - Georgia Multiple Listing Service

6. **Commission.** [Select one or more of the following below.]

   a. Seller agrees to pay Broker at Closing:
   ☑ 6.0 percent (%) of the sales price;
   ☐ $_____;
   ☐ (other)_____

   b. Broker agrees to pay cooperating broker, if any,
   ☑ 3.0 % of the sales price of Property;
   ☐ $_____;
   ☐ (other)_____

7. **Protected Period.** The length of Protected Period, as that term is herein defined, shall be 180 days.

8. **Independent Contractor Relationship.** If there is an affiliated licensee of Broker directly assisting Broker in marketing and selling the Property, said licensee shall be an: ☑ Independent contractor **OR** ☐ Employee of Broker.

9. **Agency and Brokerage.**
   The following are types of agency relationship(s) **NOT** offered by Broker:
   ☐ seller agency ☐ buyer agency ☐ designated agency ☑ dual agency ☐ sub-agency ☐ tenant agency ☐ landlord agency

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _____ Donna J Hall _____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2019 by Georgia Association of REALTORS®, Inc.                F101, Exclusive Seller Listing Agreement, Page 1 of 8, 01/01/19

10. **Special Circumstances – Approval Must be Obtained.**
   a. **Listing of Property:**
   - ☑ (1) **Bankruptcy:** Seller has filed for bankruptcy protection and this Agreement is made contingent upon the bankruptcy court authorizing the listing of the Property for sale.
   - ☐ (2) **Divorce:** Seller has filed for divorce and this Agreement is made contingent upon the court having jurisdiction over the divorce action authorizing the listing of the Property for sale.
   - ☐ (3) **Other (Please describe):** _____

   b. **Purchase and Sale of Property:**
   - ☑ (1) **Bankruptcy:** Seller has filed for bankruptcy protection. Any purchase and sale agreement for the sale of the Property will need to be conditioned upon the approval of the bankruptcy court.
   - ☐ (2) **Divorce:** Seller has filed for divorce. Any purchase and sale agreement for the sale of the Property will need to be conditioned upon the approval of the court having jurisdiction over the divorce.
   - ☐ (3) **Short Sale:** The sale of the Property will not generate sufficient proceeds to pay off the Broker's real estate commission and all mortgages or liens on the Property. Therefore, the purchase and sale agreement for the sale of the Property will need to be made contingent upon the mortgage lender(s) and other lien holders agreeing to take less than the face amount of what they are owed.
   - ☐ (4) **Seller Not on Title:** Seller does not yet have title to the Property and the purchase and sale agreement for the Property ☐ will or ☐ will not need to be subject to Seller acquiring title to the Property.
   - ☐ (5) **Other (Please describe):** _____
     _____
     _____
     _____

**B. CORRESPONDING PARAGRAPHS FOR SECTION A.**

1. <u>**Exclusive Listing Agreement.**</u> Seller represents that Seller has the full authority to enter into this Agreement. This Agreement constitutes the sole and entire agreement between the parties. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement and the terms and conditions herein may not be amended, modified or waived except by the written agreement of Broker and Seller. The failure of the parties to adhere strictly to the terms and conditions of this Agreement shall not constitute a waiver of the right of the parties later to insist on such strict adherence.

2. <u>**Listing Period.**</u>
   a. **Initial Listing Period:** The referenced Listing Period shall be the term of this Agreement and it shall begin on the referenced Starting Date and shall continue through the referenced Ending Date. If the Property is under contract prior to referenced Ending Date, this Agreement shall be automatically extended until Closing.
   b. **Extension:** If during the term of this Agreement, Seller and a prospective buyer enter into a real estate sales contract or option to purchase contract which is not consummated for any reason whatsoever, then the original expiration date of this Agreement may be extended for the number of days that Property was under contract by providing written notice of the same to the Seller prior to the referenced Ending Date set forth herein. If the Ending Date is modified in any amendment hereto, such amendment shall control. If such written notice is not given by the Ending Date, this Agreement shall terminate and be of no further force or effect.

3. <u>**Broker's Duties to Seller.**</u> Broker's sole duties to Seller shall be to:
   a. Make all disclosures required by law;
   b. Use Broker's best efforts to procure a buyer ready, willing, and able to purchase Property at the List Price (which amount includes the commission) or any other price acceptable to Seller;
   c. Comply with all applicable laws in performing its duties hereunder including the Brokerage Relationships in Real Estate Transaction Act, O.C.G.A. § 10-6A-1 et. seq.; and
   d. If selected in paragraph A.4. above, assist in negotiating terms or filling out pre-printed real estate purchase and sale agreements and/or counteroffers.

4. <u>**Negotiation: Seller's Duties.**</u> Seller represents that Seller:
   a. will cooperate with Broker to sell the Property to prospective buyers and will refer all inquiries concerning the sale of Property to the Broker during the term of this agreement;
   b. will make the Property available for showing at reasonable times as requested by Broker;
   c. will provide Broker with accurate information regarding Property (including information concerning all adverse material facts pertaining to the physical condition of Property); and
   d. will comply with all local, state and federal laws applicable to the sale of the Property.
   e. The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

Copyright© 2019 by Georgia Association of REALTORS®, Inc.                                    F101, Exclusive Seller Listing Agreement, Page 2 of 8, 01/01/19

Produced with rDocs® by Real Estate Digital. 27081 Aliso Creek Rd #200, Aliso Viejo, CA 92656. www.RealEstateDigital.com

5. **Marketing.**

   a. **Generally:** Broker is authorized to market and advertise Property for sale in any media of Broker's choosing, including the Internet and multiple listing services, and attempt to procure buyers for the Property in cooperation with other real estate brokers and their affiliated licensees. Seller acknowledges that in listing the Property in a multiple listing service, all members of multiple listing services and real estate related third parties will have access to Seller's listing information including images and recordings and the right to use all available technology to create, download, store, supplement and manipulate such listing information to assist Seller in the sale of the Property and for tracking and analyzing real estate transactions. As such, Broker may not always have control over aspects of the marketing of the property. Any media created or purchased by Broker to be used in the marketing effort shall not belong to or be the property of the Seller and may not be copied, reproduced, or used by Seller or other third parties without the express written permission of the Broker. Seller warrants that any media provided or paid for by Seller is the property of the Seller and agrees to indemnify the Broker for any claim by a third party related to the use of the provided media. Broker shall be allowed to use Seller provided materials, during the term of this Agreement, with any third-party for the purposes of marketing the property, and Seller acknowledges that Broker shall not be liable to Seller for the continued use of media by third-parties after the termination of the Agreement. Seller agrees not to place any advertisements on the Property or to advertise the Property for sale in any media except with the prior written consent of Broker. Broker is also hereby authorized to place Broker's "For Sale" sign on Property. If the Property is sold or a contract for the sale or exchange of the Property is entered into during the term of this Agreement, the Broker may advertise the Property (including images thereof) in any media of Broker's choosing as being "under contract" while a sale is pending and as being "sold" upon the closing of the Property (except nothing herein shall permit Broker to place a Sold sign on property no longer owned by Seller except with the written permission of the new owner).

   b. **Multiple Listing Service(s):** Broker agrees to file this listing with the above referenced Multiple Listing Service(s) within 48 hours after Seller signs the same (excepting weekends, federal holidays and postal holidays). Seller acknowledges that the MLS(s) is/are not a party to this Agreement and is/are not responsible for errors or omissions on the part of Seller or Broker. Seller agrees to indemnify Service(s) from and against any and all claims, liabilities, damages or losses arising out of or related to the listing and sale of Property. Seller acknowledges that by virtue of listing the Property in MLS(s), all MLS(s) members and their affiliated licensees, will have access to Seller's listing information for the purpose of assisting Seller in the sale of the Property.

   c. **Consent of Seller to be Called:** If Seller is on a "Do Not Call List," Seller expressly consents to Broker calling Seller for any purpose related to the sale of the Property. This paragraph shall survive the termination of this Agreement.

   d. **Lockboxes:** A lockbox may be used in connection with the marketing of Property. There have been isolated instances of reported burglaries of homes on which lockboxes have been placed and for which the lockbox has been alleged to have been used to access the home. In order to minimize the risk of misuse of the lockbox, Broker recommends against the use of lockboxes on door handles that can be unscrewed from the outside or on other parts of the home from which the lockbox can be easily removed. Since others will have access to Property, Seller agrees to either remove all valuables, prescription drugs and/or keys, or put them in a secure place.

6. **Commission.**

   a. In the event that during the term of this Agreement Seller enters into a contract (including an option contract) for the sale or exchange of the Property, or any portion thereof, or for the sale of the ownership interests in the legal entity which owns the Property, with any buyer, Seller agrees to pay Broker's commission at closing (and regardless of whether the closing is during or after the term of this Agreement).

   In addition, Seller agrees to immediately pay Broker the commission referenced above if during the term of this Agreement any of the following events occur:

   (1) Seller defaults under any contract to sell or exchange the Property (including an option contract);

   (2) Without the consent of Broker, Seller and a buyer mutually agree to terminate a contract for the purchase and sale or exchange of the Property (including an option contract); or

   (3) Seller refuses to accept a lawful, bona fide, written offer to purchase the Property meeting the following terms and conditions at a time when the Property is not otherwise under contract:

   (a) The purchase price in the offer, after deducting all fees, costs and contributions to be paid by the Seller (other than the real estate brokerage commission to be paid by Seller and the Seller's payment of ad valorem property taxes through the date of closing) is for at least the full listing price set forth herein and is to be paid in cash or cash equivalent at the closing.

   (b) The offer is not subject to contingencies, conditions precedent, due diligence periods, or required terms other than those set forth herein;

   (c) The offer is not subject to Seller warranties or representations other than: (i) those warranties the Seller agrees to provide in any Seller's Property Disclosure Statement the Seller has filled out and made available to prospective buyers for inclusion in any offer, and (ii) the Seller warranting to convey good and marketable title (which for all purposes herein shall have the same meaning as set forth in the GAR Purchase and Sale Agreement, Form F20) to the Property at closing by limited warranty deed; and

   (d) The date of closing in the offer is not less than thirty (30) days nor more than forty-five (45) days from the offer date.

   Notwithstanding the above, in the event there are multiple offers to purchase the Property, Seller shall not be in breach of this Agreement if the Seller first gives the prospective buyers a reasonable opportunity (not exceeding 10 days from the date of the first offer) to make their best offer to purchase the Property.

   b. Broker shall share this commission with a cooperating broker, if any, who procures the buyer of Property by paying such cooperating broker at closing the percent (%) of the sales price of Property referenced above **OR** the flat amount referenced above. In addition, cooperating brokers are expressly intended to be third-party beneficiaries under this Agreement.

   c. **Survival:** The commission rights of Broker and the commission obligations of Seller set forth herein shall survive termination or expiration of this Agreement.

   d. In the event Seller has unilaterally terminated a Listing Agreement on the Property with a different broker, Seller acknowledges that in addition to Seller's commission obligations to Broker set forth herein, Seller may also owe a real estate commission to the previous broker in certain circumstances.

Produced with zDocs® by Real Estate Digital, 27081 Aliso Creek Rd #200, Aliso Viejo, CA 92656, www.RealEstateDigital.com

7. **Protected Period.** If Seller during the Protected Period, as that term is hereinafter defined, sells, options to sell, contracts to sell ownership interests in the legal entity which owns the Property or contracts to sell or exchange Property to any buyer who made an offer on, was introduced to, visited, received information on, inquired about, or otherwise learned of the Property during the term of this Agreement, as a result of the efforts of the Broker, then Seller shall pay the commission referenced above to Broker at the closing of the sale or exchange of Property to said buyer. The term "Protected Period" shall refer to the period with the number of days referenced above following the earlier of either: (a) the expiration of this Agreement; or (b) the date that the Agreement is terminated upon the mutual, written consent of the Broker and Seller. If this Agreement is terminated by Seller without the express, written consent of Broker, the Protected Period shall be the time period referenced above plus the number of days that remained on the term of this Agreement at the time it was terminated early without the express, written consent of Broker. In such event, the Protected Period shall commence on the date this Agreement was terminated early without the express written consent of Broker. For the purposes of this Agreement, the term "buyer" shall include buyer, all members of the buyer's immediate family, any legal entity in which buyer or any member of buyer's immediate family owns or controls, directly or indirectly, more than ten percent (10%) of the shares or interests therein, and any third party who is acting under the direction or control of any of the above parties. Notwithstanding the above, no listing commission shall be paid to Broker if this Agreement has either expired or been terminated upon the mutual, written consent of Broker and Seller and the Property is sold or contracted to be sold to a prospective buyer by or through another licensed broker with whom Seller has signed an exclusive right to sell listing agreement. The commission rights and obligations set forth herein shall survive the termination or expiration of this Agreement.

8. **Independent Contractor Relationship.** This Agreement shall create an independent contractor relationship between Broker and Seller. Broker shall at no time be considered an employee of Seller.

9. **Agency and Brokerage.**
   a. **Broker's Policy on Agency:** Unless Broker indicates above that Broker is not offering a specific agency relationship, the types of agency relationships offered by Broker are: seller agency, buyer agency, designated agency, dual agency, sub-agency, landlord agency, and tenant agency.
   b. **Dual Agency Disclosure:** *[Applicable only if Broker's agency policy is to practice dual agency.]* If Seller and a prospective buyer are both being represented by the same Broker, Seller is aware that Broker is acting as a dual agent in this transaction and consents to the same. Seller has been advised that:
      (1) In serving as a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
      (2) Broker will disclose all adverse, material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from either client which is not otherwise required to be disclosed by law;
      (3) Seller does not have to consent to dual agency and, the consent of the Seller to dual agency has been given voluntarily and the Seller has read and understands the brokerage engagement agreement.
      (4) Notwithstanding any provision to the contrary contained herein, Seller hereby directs Broker, while acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.
      (5) Broker or Broker's affiliated licensees will timely disclose to each client the nature of any material relationship with other clients other than that incidental to the transaction. A material relationship shall mean any actually known personal, familial, or business relationship between Broker and a client which would impair the ability of Broker to exercise fair and independent judgment relative to another client. The other party whom Broker may represent in the event of dual agency may or may not be identified at the time Seller enters into this Agreement. If any party is identified after the Agreement and has a material relationship with Broker, then Broker shall timely provide to Seller a disclosure of the nature of such relationship.
      (6) Upon signing this brokerage engagement with the dual agency disclosures contained herein, Client's consent to dual agency is conclusively deemed to have been given and informed in accordance with state law.
   c. **Designated Agency Disclosure:** *[Applicable only if Broker's agency policy is to practice designated agency.]* Seller does hereby consent to Broker acting in a designated agency capacity in transactions in which Broker is representing Seller and a prospective buyer. With designated agency, Broker assigns one or more of its affiliated licensees exclusively to represent the Seller and one or more of its other affiliated licensees exclusively to represent the prospective buyer.
   d. Unless specified below, Broker has no other known agency relationships with other parties which would conflict with any interests of Seller (except that Broker may represent other buyers, sellers, landlords, and tenants in buying, selling or leasing property).

10. **Special Circumstances.**
    a. The sale of Property is contingent upon a third party's approval as indicated above. It shall be Seller's responsibility to seek to fulfill any contingency or condition selected herein, if any, and ensure that the purchase and sale agreement is made subject to any such contingency or condition.
    b. Broker agrees to keep confidential all information which Seller asks to be kept confidential by express request or instruction unless Seller permits such disclosure by subsequent word or conduct or such disclosure is required by law. Seller acknowledges, however, that Buyer and Buyer's broker may possibly not treat any offer made by Seller (including its existence, terms and conditions) as confidential unless those parties have entered into a Confidentiality Agreement with Seller.
    c. Broker may not knowingly give customers false information.
    d. In the event of a conflict between Broker's duty not to give customers false information and the duty to keep the confidences of Seller, the duty not to give customers false information shall prevail.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

## C. OTHER TERMS AND CONDITIONS

1. **Seller Default.** In the event Seller defaults under this Agreement, Seller shall, in addition to its other obligations set forth elsewhere herein, reimburse Broker for the out-of-pocket costs and expenses incurred by Broker and Broker's affiliated Licensees in seeking to market and sell the Property. Such costs and expenses shall include without limitation printing and copying charges, mileage at the highest rate allowed by the IRS as a business deduction and expenses to advertise the Property in various media. Seller shall also pay all costs, fees and charges for removing the listing from any multiple listing service. The payment of these costs, fees, charges and expenses by Seller shall not waive or limit Broker's right to assert any other claim, cause of action or suit (hereinafter collectively "Claims") against Seller for a real estate commission(s) and/or other damages and shall not release Seller from such Claims. Notwithstanding the above, the amount of such fees, charges, costs and expenses paid by Seller to Broker hereunder shall be an offset against any Claim of Broker for a real estate commission(s).

2. **Seller's Property Disclosure Statement.** Within three (3) days of the date of this Agreement, Seller agrees to provide Broker with a current, fully executed Seller's Property Disclosure Statement. In addition, if any dwelling on the Property, or portion thereof, was constructed prior to 1978, Seller agrees to additionally provide Broker with a current fully executed Lead-Based Paint Disclosure Exhibit (GAR Form F54) within the same timeframe so that Broker may provide the same to buyers in accordance with federal law. Broker is hereby authorized to distribute the Seller's Property Disclosure Statement and any Lead-Based Paint Exhibit to buyers interested in Property. Seller agrees to promptly update any of the above-referenced disclosure documents should any changes occur.

3. **Hazardous Conditions on Property.** Seller acknowledges that Seller owes a duty of reasonable care to keep the Property safe for prospective buyers and their agents who to view and inspect the Property. Among other things, this includes a duty to warn such invitees of dangerous conditions that would not be obvious to an invitee. Sellers are encouraged to inspect the Property for hazardous conditions and correct and eliminate all such conditions. Seller agrees to indemnify and hold Broker harmless from and against any and all claims, causes of action, suits, and damages arising out of or relating to a person or persons being injured or harmed while on the Property.

4. **Limits on Broker's Authority, Responsibility and Liability.** Seller acknowledges and agrees that Broker:
   a. may show other properties to prospective buyers who are interested in Property;
   b. shall have no duty to inspect the Property or advise Buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, and lead-based paint; inspection of the Property by a licensed home inspector, construction expert, structural engineer, or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant, or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of the Property, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Seller acknowledges that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Seller should seek independent expert advice regarding any matter of concern to Seller relative to the Property and this Agreement. Seller acknowledges that Broker shall not be responsible to monitor or supervise or inspect any portion of any construction or repairs to Property and that such tasks fall outside the scope of real estate brokerages services;
   c. shall owe no duties to Seller nor have any authority on behalf of Seller other than what is set forth in this Agreement;
   d. may make all disclosures required by law;
   e. may disclose all information about Property to others;
   f. shall not be responsible for insuring that Seller complies with the duties and deadlines contained in any purchase agreement entered into by Seller and that Seller shall be solely responsible for the same; and
   g. shall, under no circumstances, have any liability greater than the amount of the real estate commission paid hereunder to Broker (excluding any commission amount paid to a cooperating real estate broker, if any) or, if no real estate commission is paid to Broker, than a sum not to exceed one hundred dollars;
   h. shall be held harmless by Seller from any and all claims, causes of action, or damages arising out of or relating to:
       (1) inaccurate and/or incomplete information provided by Seller to Broker;
       (2) earnest money handled by anyone other than Broker;
       (3) Seller's negligence;
       (4) Any loss or theft of valuables, prescription drugs or keys, relating to the use of a lockbox or an open house resulting from Seller's failure to remove or secure the same;
       (5) the existence of undisclosed material facts about the Property or the transaction; and
       (6) any damages or injuries occurring on the Property as a result of dangerous or defective conditions on the Property or the failure to secure or restrain pets.
   i. shall have no authority to bind Seller to any contract or agreement.

5. **Disclosure of Potentially Fraudulent Activities.**
   a. To help prevent fraud in real estate transactions, Seller does hereby give Broker permission to report any suspicious, unusual and/or potentially illegal or fraudulent activity (including but not limited to mortgage fraud) to:
       (1) Governmental officials, agencies and/or authorities and/or
       (2) Any mortgage lender, mortgage insurer, mortgage investor and/or title insurance company which could potentially be harmed if the activity was in fact fraudulent or illegal.
   b. Seller acknowledges that Broker does not have special expertise with respect to detecting fraud in real estate transactions. Therefore, Seller acknowledges that:
       (1) Activities which are fraudulent or illegal may be undetected by Broker; and
       (2) Activities which are lawful and/or routine may be reported by Broker as being suspicious, unusual or potentially illegal or fraudulent.

---

6. **Miscellaneous.**
   a. **Arbitration:** All claims arising out of or relating to this Agreement and the alleged acts or omissions of any or all the parties hereunder shall be resolved by arbitration in accordance with the Federal Arbitration Act 9 U.S.C. § 1 et. seq. and the rules and procedures of the arbitration company selected to administer the arbitration. Upon making or receiving a demand for arbitration, the parties shall work together in good faith to select a mutually acceptable arbitration company with offices in Georgia to administer and conduct the arbitration. If the parties cannot mutually agree on an arbitration company, the company shall be selected as follows. Each party shall simultaneously exchange with the other party a list of three arbitration companies with offices in Georgia acceptable to that party to administer and conduct the arbitration. If there is only one (1) arbitration company that is common to both lists, that company shall administer and conduct the arbitration. If there is more than one arbitration company that is common to both lists, the parties shall either mutually agree on which arbitration company shall be selected or flip a coin to select the arbitration company. If there is not initially a common arbitration company on the lists, the parties shall repeat the process by expanding their lists by two each time until there is a common name on the lists selected by the parties. The decision of the arbitrator shall be final and the arbitrator shall have authority to award attorneys' fees and allocate the costs of arbitration as part of any final award. All claims shall be brought by a party in his or her individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. Notwithstanding anything to the contrary contained herein, this agreement to arbitrate shall not apply to: (1) any claim regarding the handling and disbursement of earnest money; and (2) any claim of Broker regarding the entitlement to or the non-payment of a real estate commission hereunder.
   b. **Referrals:** Seller hereby authorizes Broker to refer Seller to another real estate licensee or broker for brokerage or relocation services not related to the sale of the Property. Seller acknowledges and agrees that Broker may receive a valuable consideration for the referral.
   c. **No Imputed Knowledge:** Seller acknowledges and agrees that with regard to any property which Seller intends to sell, there shall be no knowledge imputed between Broker and Broker's licensees or between the different licensees of Broker. Broker and each of Broker's licensees shall be deemed to have only actual knowledge of such properties.
   d. **Governing Law:** This Agreement may be signed in multiple counterparts and shall be governed by and interpreted pursuant to the laws of the State of Georgia.
   e. **Fair Housing Disclosure:** Seller acknowledges that Broker is committed to providing equal housing opportunities to all persons and that Seller and Broker are obligated to comply with state and federal fair housing laws in selling the Property. Seller and Broker agree not to discriminate in the sale of the Property on the basis of race, color, religion, national origin, sex, familial status, disability, sexual orientation or gender identity.
   f. **Time of Essence:** Time is of the essence of this Agreement.
   g. **Notices:**
      (1) **Communications Regarding Real Estate Transactions:** Client acknowledges that many communications and notices in real estate transactions are of a time sensitive nature and that the failure to be available to receive such notices and communications can have adverse legal, business and financial consequences. During the term of this Agreement, Client agrees to remain reasonably available to receive communications from Broker.
      (2) **Notices between Broker and Client Regarding this Agreement:** Client and Broker agree that communications and notices between them regarding the terms of this Agreement shall be in writing, signed by the party giving the notice, and may be delivered in person or to any address, e-mail address and/or facsimile number to the person to whom the communication or notice is being given specifically set forth in this Agreement. It is the intent of the parties that those means of transmitting notices for which a party has not provided an address or number shall not be used for receiving notices and communications. For example, if a party has not provided an e-mail address in this Agreement, it shall mean that the party is not accepting notices or communications sent by this means.
   h. **Assignability:** As part of a sale of all or substantially all of the assets of Broker to another brokerage firm, Seller consents to this Agreement being assigned by Broker to the other brokerage firm. In such event, the assignee, upon consenting to the assignment, shall: (1) thereafter be responsible for performing all of the duties and responsibilities of the assignor under this Agreement; and (2) have all of the rights of assignor including the right to receive the commissions under the Agreement.

7. **Beware of Cyber Fraud:** Fraudulent e-mails attempting to get you to wire money to criminal computer hackers are increasingly common in real estate transactions. Under this scam, computer hackers fraudulently assume the online identity of the actual mortgage lender, closing attorney and/or real estate broker with whom you are working in the real estate transaction. Posing as a legitimate company, they then direct you to wire money to them. In many cases, the fraudulent e-mail is sent from what appears to be the authentic web page of the legitimate company responsible for sending the wiring instructions. You should use great caution in sending or receiving funds based solely on wiring instructions sent to you by e-mail. Independently verifying the wiring instructions with someone from the company sending them is the best way to prevent fraud. In particular, you should treat as highly suspect any follow up e-mails you receive from a mortgage lender, closing attorney and/or real estate broker directing you to wire funds to a revised account number. Never verify wiring instructions by calling a telephone number provided along with a second set of wiring instructions since you may end up receiving a fraudulent verification from the computer hackers trying to steal your money. Independently look up the telephone number of the company who is supposed to be sending you the wiring instructions to make sure you have the right one.

Copyright© 2019 by Georgia Association of REALTORS®, Inc.    F101, Exclusive Seller Listing Agreement, Page 6 of 8, 01/01/19

Produced with zipLogix by zipLogix Real Estate Digital, 27081 Aliso Creek Rd #200, Aliso Viejo, CA 92656, www.RealEstateDigital.com

8. **Brochures.** Brochures referenced herein are prepared courtesy of the Georgia Association of REALTORS®. The recommendations are general in nature and are not intended to be exhaustive. Some of the recommendations may not apply to specific properties. Sellers are encouraged to consult with experts and professionals of their own choosing to ensure that they are protected.

**The following Brochures have been received by the Seller(s):** (Check all that apply. Any box not checked means the Seller(s) has not received that brochure or other consumer information)

☑ GAR CB01 – The ABC's of Agency

☑ GAR CB04 – Lead Based Paint Pamphlet

☑ GAR CB07 – Mold Pamphlet

☑ GAR CB08 – EPA Home Buyer's and Seller's Guide to Radon Pamphlet

☑ GAR CB10 – Protect Yourself When Selling a House

☐ GAR CB28 – What Buyers and Sellers Should Know About Short Sales and Distressed Properties

☐ Other: _____

☐ Other: _____

9. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addenda conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:

☐ Legal Description Exhibit (F807 or other) "_____"

☐ Lead-Based Paint Exhibit (F316) "_____"

☐ Retainer Fee Exhibit (F149) "_____"

☐ Other: _____

☐ Other: _____

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph, shall control:

1/ Should Listing Agent procure an unrepresented Buyer who purchases the property, the total commission amount to be paid by the Seller shall be 5.5% of the purchase price, payable at the closing.

2/ Should Seller cancel this contract prior to the expiration date, Seller agrees to reimburse Listing Agent for all costs of marketing and advertising the property, as per Section C, Paragraph 1 of this Exclusive Seller Listing Agreement, plus a $500 administrative fee. Reimbursement shall be in the form of Certified Funds made payable to the Listing Agent, and delivered to the Listing Agent prior to the listing being withdrawn from both the FMLS and the GAMLS (First Multiple Listing Service and Georgia Multiple Listing Service.)

☐ **Additional Special Stipulations are attached.**

Copyright© 2019 by Georgia Association of REALTORS®, Inc.            F101, Exclusive Seller Listing Agreement, Page 7 of 8, 01/01/19

Produced with zDocs® by Real Estate Digital, 27081 Aliso Creek Rd #200, Aliso Viejo, CA 92656, www.RealEstateDigital.com

BY SIGNING THIS AGREEMENT, SELLER ACKNOWLEDGES THAT: (1) SELLER HAS READ ALL PROVISIONS AND DISCLOSURES
MADE HEREIN; (2) SELLER UNDERSTANDS ALL SUCH PROVISIONS AND DISCLOSURES AND HAS ENTERED INTO THIS AGREE-
MENT VOLUNTARILY; AND (3) SELLER IS NOT SUBJECT TO A CURRENT LISTING AGREEMENT WITH ANY OTHER BROKER.

## SELLER'S ACCEPTANCE AND CONTACT INFORMATION

1 Seller's Signature

Millard Farmer _____ 1 7, 2019
Print or Type Name                Date

1243 Star Drive NE
Seller's Address for Receiving Notice

Brookhaven, GA. 30319

404.822.3626
Seller's Phone Number:  ☒ Cell  ☐ Home  ☐ Work

EfMeekereicloud.com
Seller's E-mail Address

2 Seller's Signature

_____    _____
Print or Type Name                Date

_____
Seller's Address for Receiving Notice

_____

_____
Seller's Phone Number:  ☐ Cell  ☐ Home  ☐ Work

_____
Seller's E-mail Address

☐ Additional Signature Page (F146) is attached.

## BROKER / BROKER'S AFFILIATED LICENSEE CONTACT INFORMATION

RE/MAX Around Atlanta Realty
Listing Broker

Broker/Affiliated Licensee Signature

Donna J. Hall                  January 17, 2019
Print or Type Name              Date

(404) 863-7777        (404) 442-7333
Licensee's Phone Number     Fax Number

halldj@me.com
Licensee's E-mail Address

212481
GA Real Estate License Number

Atlanta Board
REALTOR® Membership

RMAA11                H-53737
MLS Office Code        Brokerage Firm License Number

(404) 592-5750          (404) 974-4930
Broker's Phone Number     Fax Number

17-B Lenox Pointe
Broker's Address

Atlanta, GA 30324

RECEIPT OF A COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY SELLER.
The above Agreement is hereby accepted  8:30  o'clock  P  m. on the date of  January 17, 2019 .

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



# PURCHASE AND SALE AGREEMENT

Offer Date: 03/23/2019



**2019 Printing**

## A. KEY TERMS AND CONDITIONS

1. **Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.
   a. **Property Identification:** Address: 1196 Dekalb ave NE
   City Atlanta _____, County Dekalb _____, Georgia, Zip Code 30307
   MLS Number: 6122275 _____ Tax Parcel I.D. Number: _____
   b. **Legal Description:** The legal description of the Property is *[select one of the following below]:*
   ☐ (1) attached as an exhibit hereto;
   ☐ (2) Condominium (attach F204 Condominium Resale Purchase and Sale Exhibit)
   ☑ (3) the same as described in Deed Book 5127 ____, Page 715 ____, et. seq., of the land records of the above county; **OR**
   ☐ (4) Land Lot(s) _____ of the _____ District, _____ Section/ GMD,
   Lot _____, Block _____, Unit _____, Phase/Section _____
   of _____ Subdivision/Development, according
   to the plat recorded in Plat Book _____, Page _____, et. seq., of the land records of the above county.

2. **Purchase Price of Property to be Paid by Buyer.**
   $ 485.000

3. **Closing Costs.**
   **Seller's Contribution at Closing:** $ 0

4. **Closing and Possession.**
   Closing Date shall be 04/29/2019 _____ with possession of the Property transferred to Buyer
   ☑ at Closing **OR** ☐ ____ days after Closing at ____ o'clock ☐ AM ☐ PM (attach F219 Temporary Occupancy Agreement).

5. **Holder of Earnest Money ("Holder").** (If Holder is Closing Attorney, F510 must be attached as an exhibit hereto, and F511 must be signed by Closing Attorney.)
   Keller Williams Realty Metro Atlanta

6. **Closing Attorney/Law Firm.**
   Fryer Law Firm

7. **Earnest Money.** Earnest Money shall be paid by ☑ check ☐ cash or ☐ wire transfer of immediately available funds as follows:
   ☐ a. $ _____ as of the Offer Date.
   ☑ b. $5,000 _____ within 3 days from the Binding Agreement Date.
   ☐ c.

8. **Inspection and Due Diligence.**
   a. **Due Diligence Period:** Property is being sold subject to a Due Diligence Period of 25 ____ days from the Binding Agreement Date.
   b. **Option Payment for Due Diligence Period:** In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer
   (1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus
   (2) shall pay Seller additional option money of $ _____ by ☐ check or ☐ wire transfer of immediately available funds either ☐ as of the Offer Date; **OR** ☐ within _____ days from the Binding Agreement Date. Any additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the purchase price at closing and shall not be refundable to Buyer unless the closing fails to occur due to the default of the Seller.

9. **Lead-Based Paint.** To the best of Seller's knowledge, the residential dwelling(s) on the Property (including any portion thereof or painted fixture therein) ☑ was (attach F316 Lead-Based Paint Exhibit) **OR** ☐ was not built prior to 1978.

10. **Brokerage Relationships in this Transaction.**
    a. **Selling Broker is** Keller Williams Realty Metro Atlanta **and is:**
    (1) ☑ representing Buyer as a client.
    (2) ☐ working with Buyer as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    _____ has been assigned to exclusively represent Buyer.
    b. **Listing Broker is** RE/MAX Around Atlanta Realty _____ **and is:**
    (1) ☑ representing Seller as a client.
    (2) ☐ working with Seller as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    _____ has been assigned to exclusively represent Seller.
    c. **Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:
    None

11. **Time Limit of Offer.** The Offer set forth herein expires at 5 _____ o'clock p ____ m. on the date 03/26/2019 _____

| Buyer(s) Initials _____ | Seller(s) Initials _____ |

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Cynthia Baer _____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2019 by Georgia Association of REALTORS®, Inc.          F201, Purchase and Sale Agreement, Page 1 of 8, 01/01/19

## B. CORRESPONDING PARAGRAPHS FOR SECTION A

1. **Purchase and Sale.**
   a. **Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by limited warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.
   b. **Examination:** Buyer may examine title and obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   c. **Title Insurance:** Buyer hereby directs any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy since such a policy affords Buyer greater coverage.

2. **Purchase Price to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at closing by wire transfer of immediately available funds, or such other form of payment acceptable to the closing attorney.

3. **Closing Costs.**
   a. **Seller's Contribution at Closing:** At closing, Seller shall make the referenced Seller's Monetary Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's Monetary Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's Monetary Contribution shall remain the property of the Seller. The Seller shall pay the fees and costs of the closing attorney: (1) to prepare and record title curative documents and (2) for Seller not attending the closing in person.
   b. **Items Paid by Buyer:** At closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; and (3) all other costs, fees and charges to close this transaction, except as otherwise provided herein.
   c. **Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing shall be prorated as of the date of closing. In the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party professional costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal for the year in which the Property is sold shall be deemed assigned to Buyer at closing.

4. **Closing and Possession.**
   a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (even in "all cash" transactions where Buyer is obtaining a mortgage loan) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension. If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.
   b. **Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property.

5. **Holder of Earnest Money.** The earnest money shall be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

6. **Closing Attorney/Law Firm.** Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. In all cases where an individual closing attorney is named in this Agreement but the closing attorney is employed by or an owner, shareholder, or member in a law firm, the law firm shall be deemed to be the closing attorney. If Buyer's mortgage lender refuses to allow that closing attorney to close this transaction, Buyer shall select a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer.

**7. Earnest Money.**

    **a. Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.

    **b. Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties at least ten (10) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day notice of the proposed disbursement to Buyer and Seller. The above-referenced check shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain and are not a penalty.

    **c. Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.

    **d. Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages arising out of the performance by Holder of its duties; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

**8. Inspection and Due Diligence.**

    **a. Right to Inspect Property:** Upon prior notice to Seller, Buyer and/or Buyer's representatives shall have the right to enter the Property at Buyer's expense and at reasonable times (including immediately prior to closing) to inspect, examine, test, appraise and survey Property. Seller shall cause all utilities, systems and equipment to be on so that Buyer may complete all inspections. Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages relating to the exercise of these rights and shall promptly restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was in prior to such testing or evaluation. If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at **www.dea.gov.**

    **b. Duty to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer shall have the sole duty to become familiar with neighborhood conditions that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime and school, land use, government and transportation maps and plans. It shall be Buyer's sole duty to become familiar with neighborhood conditions of concern to Buyer. If **Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.**

    **c. Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.

    **d. Property Sold "As-Is" Unless this Agreement is Subject to Due Diligence Period:**

        (1) **General:** Unless the Property is being sold subject to a Due Diligence Period referenced herein, the Property shall be sold "as-is" with all faults. Even if the Property is sold "as-is" Seller is required under Georgia law to disclose to the Buyer latent or hidden defects in the Property which Seller is aware and which could not have been discovered by the Buyer upon a reasonable inspection of the property. The inclusion of a Due Diligence Period herein shall: (a) during its term make this Agreement an option contract in which Buyer may decide to proceed or not proceed with the purchase of the Property for any or no reason; and (b) be an acknowledgement by Seller that Buyer has paid separate valuable consideration of $10 for the granting of the option.

        (2) **Purpose of Due Diligence Period:** During the Due Diligence Period, Buyer shall determine whether or not to exercise Buyer's option to proceed or not proceed with the purchase of the Property. If Buyer has concerns with the Property, Buyer may during the Due Diligence Period seek to negotiate an amendment to this Agreement to address such concerns.

        (3) **Notice of Decision Not To Proceed:** Buyer shall have elected to exercise Buyer's option to purchase the Property unless prior to the end of any Due Diligence Period, Buyer notifies Seller of Buyer's decision not to proceed by delivering to Seller a notice of termination of this Agreement. In the event Buyer does not terminate this Agreement prior to the end of the Due Diligence Period, then: (a) Buyer shall have accepted the Property "as-is" subject to the terms of this Agreement; and (b) Buyer shall no longer have any right to terminate this Agreement based upon the Due Diligence Period.

    **e. Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

**9. Lead-Based Paint.** If any portion of a residential dwelling on the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978.

Copyright© 2019 by Georgia Association of REALTORS®, Inc.        

10. **Brokerage Relationships in this Transaction.**

   a. **Agency Disclosure:** No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;

   (1) **No Agency Relationship:** Buyer and Seller acknowledge that, if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.

   (2) **Consent to Dual Agency:** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:

      i. **Dual Agency Disclosure:** *[Applicable only if Broker is acting as a dual agent in this transaction.]*
        (a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse.
        (b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;
        (c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.
        (d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.

      ii. **Designated Agency Disclosure:** If Broker in this transaction is acting as a designated agent, Buyer and Seller consent to the same and acknowledge that each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.

   (3) **Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.

   b. **Brokerage:** Seller has agreed to pay Listing Broker(s) a commission pursuant to a separate brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). The Listing Broker has agreed to share that commission with the Selling Broker. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective portions of the commissions out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the same from paying the remainder after the closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of the Broker(s) claim to a commission). The Brokers herein are signing this Agreement to reflect their role in this transaction and consent to act as Holder if either of them is named as such. This Agreement and any amendment thereto shall be enforceable even without the signature of any Broker referenced herein.

   c. **Disclaimer:** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to inspect the Property or to advise Buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, methamphetamine, and lead-based paint; moisture test of stucco or synthetic stucco, inspection of the Property by a professional, construction expert, structural engineer or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of Property, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Buyer and Seller acknowledge that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. Buyer and Seller acknowledge that Broker shall not be responsible to monitor, supervise, or inspect any construction or repairs to Property and such tasks clearly fall outside the scope of real estate brokerage services. If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation.

11. **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

## C. OTHER TERMS AND CONDITIONS

1. **Notices.**

   a. **Generally:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.

b. **Delivery of Notice:** A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein). Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).

c. **When Broker Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party and notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein). Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

2. **Default.**

a. **Remedies of Seller:** In the event this Agreement fails to close due to the default of Buyer, Seller's sole remedy shall be to retain the earnest money as full liquidated damages. Seller expressly waives any right to assert a claim for specific performance. The parties expressly agree that the earnest money is a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain. The parties expressly intend for the earnest money to serve as liquidated damages and not as a penalty.

b. **Remedies of Buyer:** In the event this Agreement fails to close due to the default of Seller, Buyer may either seek the specific performance of this Agreement or terminate this Agreement upon notice to Seller and Holder, in which case all earnest money deposits and other payments Buyer has paid towards the purchase of the Property shall be returned to Buyer following the procedures set forth elsewhere herein.

c. **Rights of Broker:** In the event this Agreement is terminated or fails to close due to the default of a party hereto, the defaulting party shall pay as liquidated damages to every broker involved in this transaction with whom the defaulting party does not have a brokerage engagement agreement an amount equal to the share of the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, the written offer(s) of compensation to such broker and/or other written agreements establishing such broker's commission are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty. In the event a Broker referenced herein either has a brokerage engagement agreement or other written agreement for the payment of a real estate commission with a defaulting party, the Broker shall only have such remedies against the defaulting party as are provided for in such agreement.

d. **Attorney's Fees:** In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and commission claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.

3. **Risk of Damage to Property.** Seller warrants that at the time of closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement) as on the Binding Agreement Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. At time of possession, Seller shall deliver Property clean and free of trash, debris, and personal property of Seller not identified as remaining with the Property. Notwithstanding the above, if the Property is destroyed or substantially damaged prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above notice. If Buyer or Seller do not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Binding Agreement Date. The date of closing shall be extended until the earlier of one year from the original date of closing, or seven (7) days from the date that Property has been restored to substantially the same condition as on the Binding Agreement Date and a new certificate of occupancy (if required) is issued.

4. **Other Provisions.**

a. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of the same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.

b. **Consent to Share Non-Public Information:** Buyer and Seller hereby consent to the closing attorney preparing and distributing an American Land Title Association ("ALTA") Estimated Settlement Statement-Combined or other combined settlement statement to Buyer, Seller, Brokers and Brokers' affiliated licensees working on the transaction reflected in this Agreement for their various uses.

c. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.

d. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.

e. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. This Agreement may not be assigned by Buyer except with the written approval of Seller which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement.

f. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.

g. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form, he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

h. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.

i. **No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions herein, amendments hereto, or termination hereof. However, if authorized in this Agreement, Broker shall have the right to accept notice on behalf of a party. Additionally, any Broker or real estate licensee involved in this transaction may perform the ministerial act of filling in the Binding Agreement Date. In the event of a dispute over the Binding Agreement Date, it may only be resolved by the written agreement of the Buyer and Seller.

j. **Notice of Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party.

k. **Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all representations of Seller regarding the Property; (4) the section on condemnation; and (5) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the closing.

l. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate. The letters "N.A." or "N/A", if used in this Agreement, shall mean "Not Applicable", except where the context would indicate otherwise.

m. **Time of Essence:** Time is of the essence of this Agreement.

5. **Definitions.**

a. **Banking Day**: A "Banking Day" shall mean a day on which a bank is open to the public for carrying out substantially all of its banking functions. For purposes herein, a "Banking Day" shall mean Monday through Friday excluding federal holidays.

b. **Binding Agreement Date**: The "Binding Agreement Date" shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement.

c. **Broker**: In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise.

d. **Business Day**: A "Business Day" shall mean a day on which substantially all businesses are open for business. For all purposes herein, a "Business Day" shall mean Monday through Friday excluding federal holidays.

6. **Beware of Cyber Fraud.** Fraudulent e-mails attempting to get you to wire money to criminal computer hackers are increasingly common in real estate transactions. Under this scam, computer hackers fraudulently assume the online identity of the actual mortgage lender, closing attorney and/or real estate broker with whom you are working in the real estate transaction. Posing as a legitimate company, they then direct you to wire money to them. In many cases, the fraudulent e-mail is sent from what appears to be the authentic web page of the legitimate company responsible for sending the wiring instructions. You should use great caution in sending or receiving funds based solely on wiring instructions sent to you by e-mail. Independently verifying the wiring instructions with someone from the company sending them is the best way to prevent fraud. In particular, you should treat as highly suspect any follow up e-mails you receive from a mortgage lender, closing attorney and/or real estate broker directing you to wire funds to a revised account number. Never verify wiring instructions by calling a telephone number provided along with a second set of wiring instructions since you may end up receiving a fraudulent verification from the computer hackers trying to steal your money. Independently look up the telephone number of the company who is supposed to be sending you the wiring instructions to make sure you have the right one.

7. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:

☐ All Cash Sale Exhibit (F401) "_____"

☐ Back-up Agreement Contingency Exhibit (F604) "_____"

☐ Closing Attorney Acting as Holder of Earnest Money Exhibit (F510) "_____'

☐ Community Association Fees, Disclosures and Related Issues ("Disclosure") Exhibit (F322) "_____"

☐ Condominium Resale Purchase and Sale Exhibit (F204) "_____"

☑ Conventional Loan Contingency Exhibit (F404) "C_____"

☐ FHA Loan Contingency Exhibit (F407) "_____"

☑ Lead-Based Paint Exhibit (F316) "B_____"

☐ Lease Purchase and Sale Exhibit (F207) (to be used with F916) "_____"

☐ Lease for Lease/Purchase Agreement (F916) (to be used with F207) "_____"

☐ Legal Description Exhibit (F807 or other) "_____"

☐ Loan Assumption Exhibit (F416) "_____'

☐ Sale or Lease of Buyer's Property Contingency Exhibit (F604) "_____"

☑ Seller's Property Disclosure Statement Exhibit (F301, F304, F307 or F310) "a_____"

☐ Survey of Property as Exhibit "_____"

☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F219) "_____"

☐ USDA-RD Loan Contingency Exhibit (F413) "_____"

☐ VA Loan Contingency Exhibit (F410) "_____"

☐ Other _____

☐ Other _____

☐ Other _____

☐ Other _____

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

None

☐ **Additional Special Stipulations are attached.**

## Buyer Acceptance and Contact Information

| | |
|---|---|
| *Philip Hill* | dotloop verified 03/25/19 8.17 PM EDT A7D5-4H3H-QV3D-3T9I |

**1  Buyer's Signature**

Philip Hill
Print or Type Name               Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

**2  Buyer's Signature**

Print or Type Name               Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

☐ Additional Signature Page (F267) is attached.

## Seller Acceptance and Contact Information

**1  Seller's Signature**

Millard Farmer                    3-26-19
Print or Type Name               Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

**2  Seller's Signature**

Print or Type Name               Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

☐ Additional Signature Page (F267) is attached.

## Selling Broker/Affiliated Licensee Contact Information

Keller Williams Realty Metro Atlanta
Selling Brokerage Firm

*Cynthia Baer*  (dotloop verified 03/25/19 7:32 PM EDT LOUB-DKB9-J5T1-ZEPE)
**Broker/Affiliated Licensee Signature   Date**

Cynthia Baer                     339867
Print or Type Name               GA Real Estate License #

678-358-3369                     404-564-5561
Licensee's Phone Number          Fax Number

Cynthia@CynthiaBaer.com
Licensee's E-mail Address

DeKalb Association of REALTORS
REALTOR® Membership

315 W. Ponce de Leon Ave., Suite 100
Broker's Address

Decatur, GA 30030

404-564-5560                     404-564-5561
Broker's Phone Number            Fax Number

KWAD01          H-45496
MLS Office Code   Brokerage Firm License Number

## Listing Broker/Affiliated Licensee Contact Information

RE/MAX Around Atlanta Realty
Listing Broker Firm

**Broker/Affiliated Licensee Signature   Date**

Donna J. Hall                    212481
Print or Type Name               GA Real Estate License #

404-863-7777
Licensee's Phone Number          Fax Number

halldj@me.com
Licensee's Email Address

REALTOR® Membership

17 Lenox Pointe NE Ste B
Broker's Address

Atlanta, GA  30324

404-592-5750                     404-974-4930
Broker's Phone Number            Fax Number

RMAA11          II-53737
MLS Office Code   Brokerage Firm License Number

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of _____
and has been filled in by _____.

Copyright© 2019 by Georgia Association of REALTORS®, Inc.   F201, Purchase and Sale Agreement, Page 8 of 8, 01/01/19



## SELLER'S PROPERTY DISCLOSURE STATEMENT
### EXHIBIT " A _____ "



2019 Printing

This Seller's Property Disclosure Statement ("Statement") is an exhibit to the Purchase and Sale Agreement with an Offer Date of
_3/23/2019_____ for the Property (known as or located at: 1196 Dekalb Avenue NE _____
Atlanta_____, Georgia, 30307_____). This Statement is intended to make it easier for Seller to fulfill Seller's legal duty to disclose hidden defects in the Property of which Seller is aware. Seller is obligated to disclose such defects even when the Property is being sold "as-is."

A.  INSTRUCTIONS TO SELLER IN COMPLETING THIS STATEMENT.
    In completing this Statement, Seller agrees to:
    (1)· answer all questions in reference to the Property and the improvements thereon;
    (2)· answer all questions fully, accurately and to the actual knowledge and belief of all Sellers;
    (3)  provide additional explanations to all "yes" answers in the corresponding Explanation section below each group of questions, unless the "yes" answer is self-evident;
    (4)  promptly revise the Statement if there are any material changes in the answers to any of the questions prior to closing and provide a copy of the same to the Buyer and any Broker involved in the transaction.

B.  HOW THIS STATEMENT SHOULD BE USED BY BUYER. Caveat emptor or "buyer beware" is the law in Georgia. Buyer should conduct a thorough inspection of the Property. If Seller has not occupied the Property recently, Seller's knowledge of the Property's condition may be limited. Buyer is expected to use reasonable care to inspect the Property and confirm that is suitable for Buyer's purposes. If an inspection of the Property reveals problems or areas of concern that would cause a reasonable Buyer to investigate further, Buyer should investigate further. A "yes" or "no" answer to a question means "yes" or "no" to the actual knowledge and belief of all Sellers of the Property.

C.  SELLER DISCLOSURES.

| 1. | GENERAL: | YES | NO |
|---|---|---|---|
| (a) | What year was the main residential dwelling constructed? 1990 | | |
| (b) | Is the Property vacant? | | ✓ |
| | If yes, how long has it been since the Property has been occupied? _____ | | |
| (c) | Is the Property or any portion thereof leased? | ✓ | |
| (d) | Has the Property been designated as historic or in a historic district where permission must be received to make modifications and additions? not to the best of my knowledge | | ✓ |
| EXPLANATION: | | | |

| 2. | COVENANTS, FEES, and ASSESSMENTS: | YES | NO |
|---|---|---|---|
| (a) | Is the Property subject to a recorded Declaration of Covenants, Conditions, and Restrictions ("CC&Rs") or other similar restrictions? | | ✓ |
| (b) | Is the Property part of a condominium or community in which there is a community association? IF YES, SELLER TO COMPLETE AND PROVIDE BUYER WITH A "COMMUNITY ASSOCIATION FEES, DISCLOSURES AND RELATED ISSUES" GAR F322. | | ✓ |
| EXPLANATION: | | | |

| 3. | LEAD-BASED PAINT: | YES | NO |
|---|---|---|---|
| (a) | Was any part of the residential dwelling on the Property or any painted component, fixture, or material used therein constructed or manufacture prior to 1978? IF YES, THE "LEAD-BASED PAINT EXHIBIT" GAR F316 MUST BE EXECUTED BY THE PARTIES AND THE "LEAD-BASED PAINT PAMPHLET" GAR CB04 MUST BE PROVIDED TO THE BUYER. | | ✓ |

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH ____ Donna J Hall ____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

| 4. | STRUCTURAL ITEMS, ADDITIONS AND ALTERATIONS: | YES | NO |
|----|----------------------------------------------|-----|-----|
| (a) | Has there been any settling, movement, cracking or breakage of the foundations or structural supports of the improvements? | ✓ | |
| (b) | Have any structural reinforcements or supports been added? _unknown_ | ✓ | |
| (c) | Have there been any additions, structural changes, or any other major alterations to the original improvements or Property, including without limitation pools, carports or storage buildings? | ✓ | |
| (d) | Has any work been done where a required building permit was not obtained? | | ✓ |
| (e) | Are there violations of building codes, housing codes, or zoning regulations (not otherwise grandfathered)? | | ✓ |
| (f) | Have any notices alleging such violations been received? | | ✓ |
| (g) | Is any portion of the main dwelling a mobile, modular or manufactured home? | | ✓ |
| (h) | Was any dwelling or portion thereof (excluding mobile, modular and manufactured dwelling) moved to the site from another location? | | ✓ |

EXPLANATION:

| 5. | SYSTEMS and COMPONENTS: | YES | NO |
|----|-------------------------|-----|-----|
| (a) | Approximate age of HVAC system(s): _____ years   _unknown_ | | |
| (b) | Is any heated and cooled portion of the main dwelling not served by a central heating and cooling system?   _some closets_ | ✓ | |
| (c) | Is any portion of the heating and cooling system in need of repair or replacement? | ✓ | |
| (d) | Does any dwelling or garage have aluminum wiring other than in the primary service line? _unknown_ | | ✓ |
| (e) | Are any fireplaces decorative only or in need of repair? | | ✓ |
| (f) | Have there been any reports of damaging moisture behind exterior walls constructed of synthetic stucco?   _unknown_ | | |

EXPLANATION:

| 6. | SEWER/PLUMBING RELATED ITEMS: | YES | NO |
|----|-------------------------------|-----|-----|
| (a) | What is the drinking water source: ☑ public   ☐ private   ☐ well | | |
| (b) | If the drinking water is from a well, has there ever been a test the results of which indicate that the water is not safe to drink? | | |
| (c) | What is the sewer system: ☐ public   ☐ private   ☐ septic tank | | |
| (d) | If the Property is served by a septic system, how many bedrooms was the septic system approved for by local government authorities? | | |
| (e) | Is the main dwelling served by a sewage pump? | | ✓ |
| (f) | Has any septic tank or cesspool on Property ever been professionally serviced? _N/A_ | | |
| | If yes, please give the date of last service: _____ | | |
| (g) | Are there any leaks, backups, or other similar problems with any portion of the plumbing, water, or sewage systems or damage therefrom? | | ✓ |
| (h) | Is there presently any polybutylene plumbing, other than the primary service line? | | ✓ |
| (i) | Has there ever been any damage from a frozen water line, spigot, or fixture? _unknown_ | | |

EXPLANATION:

| 7. | ROOFS, GUTTERS, and DOWNSPOUTS: | YES | NO |
|---|---|---|---|
| (a) | Approximate age of roof on main dwelling: _____ years.  *unknown* | | |
| •(b) | Has any part of the roof been repaired during Seller's ownership? | ✓ | |
| (c) | Are there any roof leaks or other problems with the roof, roof flashing, gutters, or downspouts? | ✓ | |

EXPLANATION: *leak in 2nd floor — art studio and in bedroom with Murphy bed*

| 8. | FLOODING, DRAINING, MOISTURE, and SPRINGS: | YES | NO |
|---|---|---|---|
| (a) | Is there now or has there been any water intrusion in the basement, crawl space or other parts of any dwelling or garage or damage therefrom? | | ✓ |
| (b) | Have any repairs been made to control water intrusion in the basement, crawl space, or other parts of any dwelling or garage? | | ✓ |
| (c) | Is any part of the Property or any improvements thereon presently located in a Special Flood Hazard Area? | | ✓ |
| (d) | Has there ever been any flooding? | | ✓ |
| (e) | Are there any streams that do not flow year round or underground springs? | | ✓ |
| (f) | Are there any dams, retention ponds, storm water detention basins, or other similar facilities? | | ✓ |

EXPLANATION:

| 9. | SOIL AND BOUNDARIES: | YES | NO |
|---|---|---|---|
| (a) | Are there any landfills (other than foundation backfill), graves, burial pits, caves, mine shafts, trash dumps or wells (in use or abandoned)? | | ✓ |
| (b) | Is there now or has there ever been any visible soil settlement or movement? | ✓ | |
| (c) | Are there presently any encroachments, unrecorded easements or boundary line disputes with a neighboring property owner? | | ✓ |
| (d) | Do any of the improvements encroach onto a neighboring property? | | ✓ |

EXPLANATION:

| 10. | TERMITES, DRY ROT, PESTS, and WOOD DESTROYING ORGANISMS: | YES | NO |
|---|---|---|---|
| (a) | Is there any damage resulting from animals (such as squirrels, mice, possum or raccoons); insects (such as termites, bees and ants); or by fungi or dry rot? | ✓ | |
| (b) | Is there presently a bond, warranty or service contract for termites or other wood destroying organisms by a licensed pest control company? | | ✓ |
| | If yes, is it transferable?                    What is the cost? $_____ | | |
| | If yes, company name/contact: _____ | | |
| | Coverage: ☐ re-treatment and repair    ☐ re-treatment    ☐ periodic inspections only | | |
| | Expiration Date _____         Renewal Date _____ | | |
| (c) | Is there a cost to maintain the bond, warranty or service contract? | | |
| | If yes, what is the annual cost? $_____ | | |

EXPLANATION:

| 11. | ENVIRONMENTAL, HEALTH, and SAFETY CONCERNS: | YES | NO |
|---|---|---|---|
| (a) | Are there any underground tanks or toxic or hazardous substances such as asbestos? *unknown* | | |
| (b) | Has Methamphetamine ("Meth") ever been produced on the Property? | | ✓ |
| (c) | Have there ever been adverse test results for radon, lead, mold or any other potentially toxic or environmentally hazardous substances? *unknown* | | |

EXPLANATION:

| 12. | LITIGATION and INSURANCE: | YES | NO |
|---|---|---|---|
| (a) | Is there now or has there been any litigation therein alleging negligent construction or defective building products? | | ✓ |
| (b) | Has there been any award or payment of money in lieu of repairs for defective building products or poor construction? | | ✓ |
| (c) | Has any release been signed regarding defective products or poor construction that would limit a future owner from making any claims? | | ✓ |
| (d) | During Seller's ownership have there been any insurance claims for more than 10% of the value of the Property? | | ✓ |
| (e) | Is the Property subject to a threatened or pending condemnation action? | | ✓ |
| (f) | How many insurance claims have been filed during Seller's ownership? _____ | | |

EXPLANATION:

| 13. | OTHER HIDDEN DEFECTS: | YES | NO |
|---|---|---|---|
| (a) | Are there any other hidden defects that have not otherwise been disclosed? *not to the best of my knowledge* | | ✓ |

EXPLANATION:

| 14. | AGRICULTURAL DISCLOSURE: | YES | NO |
|---|---|---|---|
| (a) | Is Property within, partially within, or adjacent to any property zoned or identified on an approved county land use plan as agricultural or forestry use? | | ✓ |

It is the policy of this state and this community to conserve, protect, and encourage the development and improvement of farm and forest land for the production of food, fiber, and other products, and also for its natural and environmental value. This notice is to inform prospective property owners or other persons or entities leasing or acquiring an interest in real property that property in which they are about to acquire an interest lies within, partially within, or adjacent to an area zoned, used, or identified for farm and forest activities and that farm and forest activities occur in the area. Such farm and forest activities may include intensive operations that cause discomfort and inconveniences that involve, but are not limited to, noises, odors, fumes, dust, smoke, insects, operations of machinery during any 24-hour period, storage and disposal of manure, and the application by spraying or otherwise of chemical fertilizers, soil amendments, herbicides, and pesticides. One or more of these inconveniences may occur as the result of farm or forest activities which are in conformance with existing laws and regulations and accepted customs and standards.

**ADDITIONAL EXPLANATIONS** (If needed):

## D. FIXTURES CHECKLIST

**Directions on HOW TO USE:** It is often unclear what constitutes a fixture which remains with the Property versus personal property which does not remain with the Property. **To avoid disputes, Seller shall have the right to remove all items on the checklist below that are left blank. THE ITEMS ON THE CHECKLIST BELOW THAT ARE CHECKED OR MARKED SHALL REMAIN WITH THE PROPERTY.** All items remaining with Property shall include remotes and/or all accessories necessary for use. Unless otherwise indicated, if an item is left blank, the Seller may remove all of that item from the Property. For example, if "Refrigerator" is left blank, Seller may remove all Refrigerators on the Property. This checklist is intended to supersede the common law of fixtures with regard to the items below. The common law of fixtures shall apply to all items not on this checklist. Seller shall remove all items left blank below prior to closing or the transfer of possession, whichever is later. Seller shall lose the right to remove those items not timely removed. In removing items, Seller shall use reasonable care to prevent and repair damage to the area where the item was removed. Items identified as remaining with the Property shall mean those specific items as they existed in the Property as of the Binding Agreement Date. No such item shall be removed from the Property unless it is broken or destroyed. In such an event, it shall be replaced with a substantially identical item, if reasonably available. If not reasonably available, it shall be replaced with a substantially similar item of equal quality and value, or better. The same or newer model of the item being replaced in the same color and size and with the same functions or better shall be considered substantially identical.

**Appliances**
- ☑ Clothes Dryer
- ☑ Clothes Washing Machine
- ☑ Dishwasher
- ☐ Garage Door Opener
- ☑ Garbage Disposal
- ☑ Ice Maker *may not work*
- ☐ Microwave Oven
- ☑ Oven
- ☐ Refrigerator w/o Freezer
- ☐ Refrigerator/Freezer
- ☐ Free Standing Freezer
- ☑ Stove
- ☐ Surface Cook Top
- ☐ Trash Compactor
- ☐ Vacuum System
- ☐ Vent Hood
- ☐ Warming Drawer
- ☐ Wine Cooler

**Home Media**
- ☐ Amplifier
- ☑ Cable Jacks *Comcast*
- ☐ Cable Receiver
- ☐ Cable Remotes
- ☐ Intercom System
- ☐ Internet HUB
- ☑ Internet Wiring
- ☑ Satellite Dish
- ☐ Satellite Receiver
- ☐ Speakers
- ☐ Speaker Wiring
- ☑ Switch Plate Covers

- ☐ Television (TV)
- ☐ TV Antenna
- ☐ TV Mounts/Brackets
- ☐ TV Wiring

**Interior Fixtures**
- ☐ Ceiling Fan
- ☐ Chandelier
- ☐ Closet System
- ☐ Fireplace (FP)
- ☐ FP Gas Logs
- ☐ FP Screen/Door
- ☐ FP Wood Burning Insert
- ☑ Light Bulbs
- ☑ Light Fixtures
- ☑ Mirrors *NO*
  - ☐ Wall Mirrors
  - ☐ Vanity (hanging) Mirrors
- ☐ Shelving Unit & System
- ☑ Shower Head/Sprayer
- ☑ Storage Unit/System
- ☑ Window Blinds (and *NO* Hardware)
- ☐ Window Shutters (and Hardware)
- ☐ Window Draperies (and Hardware)
- ☐ Unused Paint

**Landscaping / Yard**
- ☐ Arbor
- ☐ Awning
- ☐ Basketball Post and Goal

- ☐ Birdhouses
- ☐ Boat Dock
- ☐ Fence - Invisible
- ☐ Dog House
- ☐ Flag Pole
- ☐ Gazebo
- ☐ Irrigation System
- ☐ Landscaping Lights
- ☑ Mailbox
- ☐ Out/Storage Building
- ☐ Porch Swing
- ☐ Statuary
- ☐ Stepping Stones
- ☐ Swing Set
- ☐ Tree House
- ☐ Trellis
- ☐ Weather Vane

**Recreation**
- ☐ Gas Grill
- ☐ Hot Tub
- ☐ Outdoor Furniture
- ☐ Outdoor Playhouse
- ☐ Pool
- ☐ Pool Equipment
- ☐ Pool Chemicals
- ☐ Sauna

**Safety**
- ☐ Alarm System (Burglar)
- ☐ Alarm System (Smoke/Fire)
- ☐ Security Camera
- ☐ Carbon Monoxide Detector
- ☑ Doorbell
- ☐ Door & Window Hardware

- ☐ Fire Sprinkler System
- ☐ Gate
- ☐ Safe (Built-In)
- ☑ Smoke Detector
- ☐ Window Screens

**Systems**
- ☐ A/C Window Unit
- ☐ Air Purifier
- ☐ Whole House Fan
- ☐ Attic Ventilator Fan
- ☐ Ventilator Fan
- ☐ Dehumidifier
- ☐ Generator
- ☐ Humidifier
- ☐ Propane Tank
- ☐ Propane Fuel in Tank
- ☐ Fuel Oil Tank
- ☐ Fuel Oil in Tank
- ☐ Sewage Pump
- ☐ Solar Panel
- ☐ Sump Pump
- ☑ Thermostat
- ☐ Water Purification System
- ☐ Water Softener System
- ☐ Well Pump

**Other**
- ☐ _____
- ☐ _____
- ☐ _____
- ☐ _____
- ☐ _____

---

**Clarification Regarding Multiple Items.** Items identified above as remaining with Property where Seller is actually taking one or more of such items shall be identified below. For example, if "Refrigerator" is marked as staying with the Property, but Seller is taking the extra refrigerator in the basement, the extra refrigerator and its location shall be described below. This section shall control over any conflicting or inconsistent provisions contained elsewhere herein.

_____

_____

_____

**Items Needing Repair.** The following items remaining with Property are in need of repair or replacement:

_____ *unknown* _____

_____

_____



## LEAD-BASED PAINT
## EXHIBIT " B "



**2019 Printing**

This Exhibit is part of the Agreement with an Offer Date of __3/23/2019__ _____ for the purchase and sale or lease of that certain Property known as: __1196 Dekalb Avenue NE__ , __Atlanta__ , Georgia __30307__ .

1. **Purchase and Sale or Lease Transaction Lead Warning Statement**.
   Every purchaser or tenant of any interest in residential property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller or Landlord of any interest in residential real property is required to provide the Buyer or Tenant with any information on lead-based paint hazards from risk assessments or inspections in the Seller's or Landlord's possession and notify the Buyer or Tenant of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

2. **Seller's/Landlord's Disclosure**. _X NH_
   _____
   Initials of Seller / Landlord

   A. Presence of lead-based paint and/or lead paint hazard *[check one below]*:
      ☑ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain below):
      _Property built in 1890_
      ☐ Seller/Landlord has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
   B. Records and Reports available to the Seller/Landlord *[check one below]*:
      ☐ Seller/Landlord has provided the Buyer/Tenant with all the available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list document below):
      _____
      ☐ Seller/Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

3. **Buyer's/Tenant's Acknowledgment**.
   _PH_
   Initials of Buyer / Tenant
   04/25/19 dotloop verified

   A. Buyer/Tenant has received copies of all information, if any, listed above.
   B. Buyer/Tenant has read and understands the above lead warning statement and has received the pamphlet "*Protect Your Family from Lead In Your Home*".
   C. Buyer/Tenant has *[check one below]*:
      ☐ Received a ten (10) day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
      ☑ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

4. **Broker's Acknowledgment**.
   _____
   Initials of Broker or Licensee of Broker

   Broker has informed the Seller/Landlord of the Seller's/Landlord's obligations under 42 U.S.C. § 4852(d) and is aware of his/her responsibility to ensure compliance.

5. **Certification of Accuracy**.
   The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| | | |
|---|---|---|
| _Philip Hill_ | dotloop verified 03/25/19 8:17 PM EDT ONYI-LYI-4Y-HQFB-SJUT | |
| **1 Buyer/Tenant Signature** | **Date** | |

| | | |
|---|---|---|
| X _Mullv Fown_ | | _1/21/19_ |
| **1 Seller/Landlord Signature** | | **Date** |

| | | |
|---|---|---|
| **2 Buyer/Tenant Signature** | **Date** | |

| | | |
|---|---|---|
| **2 Seller/Landlord Signature** | | **Date** |

☐ Additional Signature Page (F267/F931) is attached.
_Cynthia Baer_
dotloop verified 03/25/19 7:44 PM EDT SR7K-5WVN-77JT-JFJ7
Selling/Leasing Broker    Date

☐ Additional Signature Page (F267/F931) is attached.
_Dan-g_
Listing Broker    _Jan 31, 2019_
Date

**NOTE: It is the intent of this Exhibit that it be applicable to both the sale and leasing of Property. The use of terms like "Buyer/Tenant" shall mean either a Buyer or a Tenant or both as the context may indicate.**

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH __Donna J Hall__ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.



# CONVENTIONAL LOAN CONTINGENCY
## EXHIBIT "C____"



**2019 Printing**

This Exhibit is part of the Agreement with an Offer Date of 03/23/2019 _____ for the purchase and sale of that certain
Property known as: 1196 Dekalb ave NE _____ ,Atlanta _____ , Georgia 30307 _____ .

1. **Application.** Buyer shall promptly apply for and in good faith seek to obtain the conventional loan or loans described below ("Loan(s)")
such that Buyer can fulfill Buyer's obligations hereunder prior to the expiration of this Conventional Loan Contingency.

   *[Select A. or A. and B. below. Any box not selected shall not be a part of this Agreement. All Loan terms must be filled in.]*

| ☑ A. | FIRST MORTGAGE LOAN | **Loan Amount** | **Term** | **Interest Rate (at par)** | **Rate Type** | **Source Of Loans Term** |
|---|---|---|---|---|---|---|
| | | 75____ % of purchase price | 30____ years | 5.75____ % per annum (or initial rate on adjustable loan) | ☑ Fixed<br>☐ Adjustable<br>☐ Interest Only | ☑ Institutional<br>☐ Seller<br>☐ Other |
| ☐ B. | SECOND MORTGAGE LOAN | ____ % of purchase price | ____ years | ____ % per annum (or initial rate on adjustable loan) | ☐ Fixed<br>☐ Adjustable<br>☐ Interest Only | ☐ Institutional<br>☐ Seller<br>☐ Other |

2. **Use of Particular Mortgage Lender.** Unless an Approved Mortgage Lender is identified below, Buyer may apply for approval of the
Loan(s) with any institutional mortgage lender licensed to do business in Georgia. If an Approved Mortgage Lender(s) is identified below,
Buyer shall apply for approval of the Loan(s) with at least one such Approved Mortgage Lender. Nothing herein shall require Buyer to
obtain mortgage financing from an Approved Mortgage Lender.

   **Approved Mortgage Lender(s)**

   | Bank South - Stephanie Hass |
   |---|

   (hereinafter singularly "Approved Mortgage Lender" and collectively "Approved Mortgage Lender(s)")

3. **Buyer May Apply for Different Loan(s).** A Loan Denial Letter (as that term is defined below) must be for the Loan(s) described above.
Buyer may also apply for different loans than the Loan(s) described above. However, the denial of such other loans shall not be a basis
for Buyer to terminate this Agreement.

4. **Buyer to Notify Seller of Intent to Proceed.** When it is known, Buyer shall promptly notify seller of any mortgage lender to whom Buyer
has sent a notice of intent to proceed with loan application and the name and contact information for the loan originator.

5. **Financing Contingency.** Buyer shall have 24____ days from the Binding Agreement Date ("Financing Contingency Period") to determine
if Buyer has the ability to obtain the Loan(s) described above ("Financing Contingency"). Buyer shall be deemed to have the ability to
obtain the Loan(s) unless prior to the end of the Financing Contingency Period, Buyer: a) notifies Seller that Buyer is terminating the
Agreement because Buyer has been turned down for the Loan(s) and b) provides Seller within seven (7) days from the date of such
notice a letter of loan denial from a mortgage lender based upon the mortgage lender's customary and standard underwriting criteria
("Loan Denial Letter"). The Loan Denial Letter and mortgage lender issuing the Loan Denial Letter must meet all of the requirements set
forth elsewhere in this Exhibit. Notwithstanding any provision to the contrary contained herein, the Loan Denial Letter may be provided to
Seller after the Financing Contingency Period has ended if the above-referenced seven (7) day period to provide the Loan Denial Letter
falls outside of the Financing Contingency Period.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Cynthia Baer    IS INVOLVED AS A REAL
ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO
THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2019 by Georgia Association of REALTORS®, Inc.        F404, Conventional Loan Contingency Exhibit, Page 1 of 3, 01/01/19

6. **Use of Approved Mortgage Lender and Loan Denial Letter**. If Buyer has agreed to apply for the Loan(s) with an Approved Mortgage Lender, the Loan Denial Letter must be from an Approved Mortgage Lender. If Buyer is not required to apply for the Loan(s) with an Approved Mortgage Lender, the Loan Denial Letter may be from any institutional mortgage lender licensed to do business in Georgia. A Loan Denial Letter from a non-institutional mortgage lender shall not be the basis for Buyer to terminate this Agreement.

Notwithstanding any provision to the contrary contained herein, the Loan Denial Letter may not be based solely upon any of the following: (a) Buyer lacking sufficient funds other than the amount of the Loan(s) to close; (b) Buyer not having leased or sold other real property (unless such a contingency is expressly provided for in this Agreement); (c) Buyer not having provided the lender(s) in a timely fashion with all information required by lender, including but not limited to, loan documentation, Official Wood Infestation Reports, structural letters, well tests, septic system certifications, flood plain certifications and any other similar information required by lender (hereinafter collectively "Required Information"); or (d) Buyer making purchases that adversely affect Buyer's debt to income ratio.

Buyer may terminate this Agreement without penalty based upon an inability to obtain the Loan(s) only if Buyer fulfills all of the applicable requirements set forth in this Exhibit.

7. **Right of Seller to Request Evidence of Buyer's Ability to Close**. If the Financing Contingency ends without Buyer terminating this Agreement, Seller shall have the right, but not the obligation, to request that Buyer provide Seller with written evidence of Buyer's financial ability to purchase the Property ("Evidence"). A copy of a loan commitment from each institutional mortgage lender from whom Buyer is seeking mortgage financing to purchase the Property stating the type, amount and terms of the loan(s) and the conditions for funding the loan(s), shall be deemed sufficient Evidence. The provision of such Evidence is not a guarantee that the mortgage loan(s) will be funded or that Buyer will close on the purchase of the Property. Buyer shall have seven (7) days from the date Seller delivers notice to Buyer requesting such Evidence to produce the same. No request for such Evidence shall be made by Seller less than seven (7) days from the date of Closing.

8. **Seller's Right to Terminate.** In the event Buyer fails to provide Seller with the Evidence of Buyer's Ability to Close within the timeframe set forth above, Seller shall notify Buyer of the default and give Buyer three (3) days from the date of the delivery of the notice to cure the same. If Buyer does not timely cure the default, Seller may terminate this Agreement within seven (7) days thereafter due to Buyer's default upon notice to Buyer. In the event Seller does not terminate this Agreement within that timeframe, the right to terminate on this basis shall be waived.

9. **Authorization of Buyer to Release Information to Seller and Brokers**. Buyer does hereby authorize Seller and the Brokers identified herein to communicate with the lenders with whom Buyer is working to determine and receive from said lenders any or all of the following information: (a) the status of the loan application; (b) Buyer's financial ability to obtain the Loan(s) or other loans for which Buyer has applied; (c) whether and when Buyer provided the lenders with Required Information; (d) whether and what conditions may remain to complete the loan application process and issue of a loan commitment; and (e) the basis for any Loan Denial Letter.

10. **Miscellaneous.** For the purposes of this Exhibit, the term "mortgage loan" shall refer to a secured lending transaction where the loan or promissory note is secured by a deed to secure debt on the Property. Whether such mortgage loan is a first or second mortgage loan is a reference to the legal priorities of the deeds to secure debt relative to each other and other liens and encumbrances.

11. **Appraisal Contingency.** In addition to Buyer's other rights herein, this Agreement shall be subject to the following appraisal contingency. Buyer shall cause the Lender to: (a) select an appraiser to perform one or more appraisals of the Property and (b) provide Buyer with a copy of any appraisal that is for less than the purchase price of the Property. If any such appraisal is for less than the purchase price, Buyer shall within ___24___ days of the Binding Agreement Date have the right to request that Seller reduce the sales price of the Property to a price not less than the appraised price by submitting an Amendment to Sales Price (F713) ("ATSP") to Seller along with a copy of the appraisal supporting the lower price. In the event that Buyer does not submit an ATSP to Seller, Buyer shall be deemed to have waived Buyer's right to do so and this Agreement shall no longer be subject to an appraisal contingency.

Seller shall accept or reject the ATSP within three (3) days from the date that the ATSP is delivered to Seller but not later than one (1) day prior to the Closing (excluding any extensions of the closing resulting from the unilateral extension of the closing date). If Seller timely accepts the ATSP, Buyer shall be obligated to purchase the Property in accordance with this Agreement as amended by the ATSP. If Seller does not accept the ATSP, Buyer shall have the right, but not the obligation, to terminate this Agreement without penalty upon notice to Seller given within three (3) days of the date that Buyer receives notice that Seller has not accepted the ATSP but not later than one (1) day prior to the Closing. Nothing herein shall require Buyer to seek a reduction in the sales price of the Property. In such event, Buyer shall be obligated to purchase the Property for the price set forth in this Agreement.

12. **Lender Required Repairs.** Any repairs required by lender are to be completed and paid for by _Seller_____ prior to Closing provided such repairs do not exceed $_500_____ in total costs. In the event the anticipated costs exceed the amount listed above, an itemized estimate shall be provided to all parties from third-party contractor(s), selected by Seller, of the total costs of repairs to be made to the Property.

Seller or Buyer shall have the option to pay the excess amount. If the parties do not agree in writing who shall pay the excess amount, then this Agreement shall terminate within three (3) days of written notice of itemized estimate.

*Philip Hill*                                                    dotloop verified
                                                                03/25/19 8:17 PM EDT
                                                                OOLO-ZQ2I-BLLF-VZCM
**1 Buyer's Signature**

Philip Hill
Print or Type Name

**2 Buyer's Signature**

Print or Type Name

☐ **Additional Signature Page (F267) is attached.**

Keller Williams Realty Metro Atlanta
Selling Brokerage Firm

*Cynthia Baer*                                                  dotloop verified
                                                                03/25/19 7:36 PM EDT
                                                                LVAC-KG2R-OANY-9P1G
**Broker/Affiliated Licensee Signature**

Cynthia Baer
Print or Type Name

DeKalb Association of REALTORS
REALTOR® Membership

**1 Seller's Signature**

Millard Farmer
Print or Type Name

**2 Seller's Signature**

Print or Type Name

☐ **Additional Signature Page (F267) is attached.**

RE/MAX Around Atlanta Realty
Listing Brokerage Firm

**Broker/Affiliated Licensee Signature**

Donna J. Hall
Print or Type Name

REALTOR® Membership

## CERTIFICATE OF SERVICE

This is to certify that I have this day served debtor, creditors and Trustee in

the foregoing matter with a copy of this document by depositing in United States

Mail copies by email or by notification by electronic filing to:

Millard Courtney Farmer, Jr.
1196 DeKalb Ave
Atlanta, GA 30307

Julie M. Anania
Nancy J. Whaley
Standing Ch. 13 Trustee
Suite 120
303 Peachtree Center Avenue
Atlanta, GA 30303-1286

City of Atlanta
Office of Revenue
55 Trinity Ave, Suite 1350
Atlanta, GA 30303

DeKalb County Tax Commissioner
4380 Memorial Drive, Suite 100
Decatur, GA 30032

John H. Murphy
John Harold Murphy
Kilpatrick Townsend & Stockton. LLP
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309

LVNV Funding, LLC its successors and assigns as
assignee of Citibank, N.A.
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

1

Resurgent Capital Services
P.O. Box 10587
Greenville, SC 29603

Collin Michael Bernardino
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, N.E.
Atlanta, Ga. 30309-4530

This 16th day of April, 2019.

/s/ Ralph Goldberg
Ralph Goldberg
Georgia Bar No. 299475
Attorney for Debtor

**Goldberg & Cuvillier, P.C.**
1400 Montreal Road, Suite 100
Tucker, Georgia 30084-6919
(770) 670-7343
(770) 670-7344 (FAX)
attorneygoldberg@hotmail.com

2